## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: CROP INPUTS ANTITRUST LITIGATION | MDL No. _____ |

## BRIEF IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiffs Barbara Piper, as Executrix of the Estate of Michael Piper, Charles Lex, John Swanson, Jones Planting Co. III, and Jason Canjar  ("Movants")[1] respectfully submit this brief in support of their Motion For Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings to the Southern District of Illinois. *Piper v. Bayer CropScience, LP*, No. 3:21-cv-00021-NJR (S.D. Ill.) ("*Piper*"), was the first-filed of 13 nearly identical civil antitrust actions now pending in three districts. The majority of the Related Actions were filed in the Southern District of Illinois.[2]

The Southern District of Illinois also bears a significant nexus to the allegations in the litigation and is a convenient forum for the parties and witnesses. The Southern District has already related six of the seven pending cases before Chief Judge Nancy J. Rosenstengel, who in turn has streamlined proceedings by permitting plaintiffs in five of the seven cases to file a consolidated complaint and has set a schedule for Defendants to respond.[3]

---

[1] Movants are Plaintiffs in *Piper*, *Swanson v. Bayer CropScience LP, et al.*, No. 3:21-cv-0046-NJR (S.D. Ill.) ("*Swanson*"), *Lex v. Bayer CropScience LP, et al.*, No. 3:21-cv-0122-NJR (S.D. Ill.), *Jones Planting Co. III v. Bayer CropScience LP, et al.*, No. 3:21-cv-00173-NJR (S.D. Ill.) ("*Jones*"), and *Canjar v. Bayer CropScience LP, et al.*, No. 3:21-cv-00181-NJR (S.D. Ill.).

[2] The Related Actions are set forth in the Schedule of Related Actions, submitted herewith.

[3] The only case filed in the Southern District of Illinois and not related before Judge Rosenstengel is *Vienna Eqho Farms v. Bayer CropScience LP*, No. 3:21-cv-00204, which was filed on February 22, 2021, the day before this Motion was submitted. There is every reason to expect the case, like the others, to be related before Chief Judge Rosenstengel in due course.

## BACKGROUND

Crop Inputs are agricultural products that include seeds and chemicals used to protect crops against pests, such as insecticides, fungicides, and herbicides. After months of research and investigation, Plaintiff Barbara Piper initiated the first action in the country in the Southern District of Illinois, asserting antitrust claims against the largest Crop Input manufacturers, wholesalers and retailers for allegedly conspiring to restrain the market for Crop Input prices nationwide. *See*, *Piper*, ECF No.1. *Piper* did not benefit from any U.S. governmental criminal proceedings. Rather, the *Piper* complaint was the first to detail a conspiracy among the Defendants[4] to enforce an opaque, outdated market structure designed to maintain supracompetitive Crop Input prices by, among other things, blocking the emergence of new electronic sales platforms, like FBN and AgVend, that planned to offer Crop Inputs directly to farmers. *See Piper*, ECF No. 58 ("Consol. *Piper* Compl.") ¶¶ 3-4, 81; *Budde v. Bayer CropScience, LP, et al.*, No. 2:21-cv-02095 (D. Kan. Feb. 19, 2021), ECF No. 1. ("*Budde* Compl.") at ¶¶ 2-3; *Handwerk*, ECF No.1 ("*Handwerk* Compl.") at ¶¶ 4-5.[5]

---

[4] The Related Actions all bring claims against Defendants Bayer CropScience LP; Bayer CropScience, Inc.; Corteva Inc.; Cargill Incorporated; BASF Corporation; Syngenta Corporation; Winfield Solutions, LLC; Univar Solutions, Inc.; Federated Co-operatives Ltd.; CHS Inc.; Nutrien Ag Solutions Inc.; Growmark Inc.; Simplot AB Retail Sub, Inc.; and Tenkoz Inc. Certain Related Actions additionally name Pioneer Hi-Bred International, Inc. and Growmark FS, LLC, which are subsidiaries or affiliates of the Defendants listed above. *See, e.g.*, *Piper*, ECF No. 58 (Pioneer Hi-Bred International, Inc.); *Handwerk v. Bayer CropScience*, LP, No. 0:21-cv-00351-MJD-TNL (D. Minn. Feb. 5, 2021), ECF No. 1 (Growmark FS, LLC); *Ryan Bros., Inc. v. Bayer Cropscience LP*, No. 0:21-cv-00433-MJD-TNL (D. Minn. Feb 17, 2021), ECF No. 1 (Growmark FS, LLC); *Flaten v. Bayer Cropscience LP*, No. 0:21-cv-00404-MJD-TNL (D. Minn. Feb. 11, 2021), ECF No. 1 (Growmark FS, LLC); *Pfaff v. Bayer Cropscience LP*, No. 0:21-cv-00462-MJD-TNL (D. Minn. Feb 19, 2021), ECF No. 1 (Growmark FS, LLC); *Carlson v. Bayer CropScience LP*, No. 0:21-cv-00475-NEB-LIB (D. Minn. Feb 22, 2021), ECF No. 1 (Growmark FS, LLC).

[5] Plaintiffs in the related actions allege that the Defendants use contractual agreements between manufacturers, wholesalers, and retailers to prevent farmers from receiving accurate pricing and performance information. *See* Consol. *Piper* Compl. ¶¶ 48-50; *Budde* Compl. ¶¶62-64; *Handwerk* Compl. ¶¶ 60-62. These agreements typically include confidential terms that provide for

*Piper* counsel quickly reached out to Defendants and began coordinating scheduling and other preliminary matters. The first action asserting similar claims based on the same unique set of facts alleged in *Piper* was filed on January 13, 2021. *See Swanson*, ECF No.1. Additional cases soon followed, and *Piper*'s counsel, recognizing a clear overlap in factual and legal issues, reached out to the parties in each action to organize the case. For example, after meeting-and-conferring with *Piper*'s counsel, the *Lex* plaintiff agreed—in the interest of justice and judicial efficiency—to voluntarily dismiss their action in the District of Minnesota and refile in the Southern District of Illinois. *See Lex v. Bayer CropScience LP, et al*, No. 0:21-cv-00188-PJS-HB (D. Minn. Jan. 29, 2021), ECF No.11; *Lex v. Bayer CropScience LP, et al*, No. 3:21-cv-00122 (S.D. Ill. Feb. 2, 2021), ECF No. 1. The *Piper*, *Swanson*, and *Lex* plaintiffs—representing 100% of the actions on file at that time—entered a stipulation with Defendants on February 3, 2021, that sought to streamline the proceedings and maximize judicial resources by providing for the filing of a consolidated complaint by February 16, 2021. *See Piper*, ECF No. 44. The stipulation also suspended Defendants' time to respond to the individual complaints in those actions, avoiding unnecessary motion practice by establishing a single schedule for responses to the consolidated complaint. *Id.*

Two days later, on February 5, 2021, Plaintiff Handwerk initiated an action in the District of Minnesota asserting nearly identical claims against the same Defendants involved in the same conspiracy alleged in *Piper*, *Swanson*, and *Lex. See Handwerk* Compl. *Piper* counsel contacted *Handwerk* counsel to encourage them to streamline the proceedings and maximize efficiency through consolidation of all cases involving the same misconduct alleged in the litigation before

---

significant rebates to retailers as long as they agree to keep prices confidential, avoid price competition, and prioritize the sale of certain Crop Inputs. *See* Consol. *Piper* Compl. ¶ 50; *Budde* Compl. ¶ 60; *Handwerk* Compl. ¶ 67.

Chief Judge Rosenstengel in the Southern District of Illinois. *Handwerk* counsel declined to coordinate with the other cases and instead proceeded to file three essentially identical actions in the District of Minnesota over the next two weeks. *See Flaten v. Bayer CropScience LP*, No. 0:21-cv-00404-MJD-TNL (D. Minn.); *Pfaff v. Bayer CropScience LP*, No. 0:21-cv-00462-MJD-TNL (D. Minn.); *Ryan Bros., Inc.v. Bayer CropScience LP*, No. 0:21-cv-00433-MJD-TNL (D. Minn.).

Meanwhile, Plaintiffs in the Southern District of Illinois pressed forward. They sought to consolidate *Piper*, *Swanson*, and *Lex* and any other related cases filed in the Southern District of Illinois and to appoint lead counsel pursuant to Fed. R. Civ. P. 23(g).[6] *Piper*, ECF No. 53. These moves were designed to maximize efficiencies and ensure a group of experienced antitrust class action attorneys were protecting the bests interests of the class. They also developed a consolidated complaint that included all but one of the actions on file in that District at the time.[7] This Consolidated Complaint was filed on February 16, in accordance with the stipulation and order entered by the court. *Id.*, ECF Nos. 55 (initial filing), 58 (Consol. *Piper* Compl.).

Additional complaints continued to be filed (including by the *Handwerk* plaintiff's counsel) after the Consolidated Complaint was filed in the Southern District of Illinois. *See Budde* Compl. (Feb. 19, 2021). Each of these subsequent actions, like those before them, arise from the same set of facts and occurrences initially developed by *Piper* and assert similar claims against the same group of Crop Inputs manufacturers, wholesalers, and retailers. A table comparing the relevant allegations in each of these complains is attached for reference as Exhibit

---

[6] This motion is still pending.

[7] Plaintiff in *Duncan v. Bayer CropScience, LP, et al.,* No. 3:21-cv-00173 (S.D. Ill), declined to be included in the consolidated complaint.

A. This table clearly demonstrates that later-filed actions are merely driving down the road paved by *Piper*.

Given the substantial overlap in factual and legal issues presented by the Related Actions, transfer to the Southern District of Illinois, where the first-filed and most advanced action is pending, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 is appropriate. As explained below, all factors support transfer to the Southern District of Illinois, which is close to several essential members of the conspiracy, has a strong nexus to this action, and is well-positioned to handle this case due to its less congested docket and the experience of Chief Rosenstengel, who has successfully managed a recent agricultural antitrust   class action. *See First Impressions Salon, Inc. v. National Milk Producers Federation*, No. 3:13-cv-00454 (S.D. Ill.).

Accordingly, Movant's motion to transfer and consolidate or coordinate proceedings should be GRANTED.

## ARGUMENTS

## I.   THE RELATED ACTIONS SHOULD BE TRANSFERRED AND COORDINATED OR CONSOLIDATED FOR PRETRIAL PROCEEDINGS

28 U.S.C. § 1407(a) permits centralization of civil actions pending in different federal district courts when cases meet three requirements: (1) the cases "involv[e] one or more common questions of law and fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a) (2021). Transfer to and consolidation or coordination of the Related Actions in the Southern District of Illinois will satisfy each of these goals.

**A.  The Related Actions Involve Numerous Common Questions of Law and Fact.**

Antitrust cases asserting claims based on the same alleged restraint of trade are consistently transferred to and consolidated or coordinated in a single district because they present questions of fact common to all pending actions. *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013); *In re Static Random Access Antitrust Litig.*, 473 F. Supp. 2d 1384, 1385 (J.P.M.L. 2008)*; In re TFT-LCD Antitrust Litig.*, 483 F. Supp. 2d 1353, 1354 (J.P.M.L. 2007). Transfer and consolidation or coordination is likewise appropriate here because, like the antitrust cases cited above, the Related Actions each center around common questions of law and fact regarding the alleged conspiracy between major Crop Input manufacturers, wholesalers, and retailers to boycott electronic sales platforms and restrain the market for Crop Inputs sold to farmers throughout the United States. *See* Exhibit A. Common factual and legal questions before the courts in the Related Actions include, *inter alia*:

- Whether Defendants conspired to unreasonably restrain trade in violation of federal antitrust laws and state antitrust laws by, among other things, engaging in a group boycott of electronic platforms, meeting at industry conferences, auditing retailers or wholesalers suspected of selling Crop Inputs to electronic platforms, and spreading rumors about the electronic platforms;

- The duration of the conspiracy alleged in the Related Actions;

- Whether Defendants' conspiracy caused plaintiffs to pay supracompetitive prices for Crop Inputs;

- Whether Defendants and their co-conspirators fraudulently concealed their anticompetitive conduct; and

- The appropriate measure of damages sustained by members of the proposed classes.

As this list, the preceding section, and table of allegations demonstrate, the answers to these questions will rely upon the same facts, witnesses, and evidence in each of the Related Actions. Accordingly, the Panel has good reason to centralize these actions in a single judicial district.

### B. Transfer and Consolidation or Coordination Will Promote the Just and Efficient Conduct of this Litigation.

Transfer and consolidation or coordination of the Related Actions for pretrial proceedings will also promote their just and efficient conduct, consistent with the third requirement (we address the second requirement below). Given the nearly identical factual and legal issues alleged in the complaints, the Related Actions will likely involve many of the same pretrial issues, and the parties will seek much of the same discovery, including communications with and about FBN, AgVend and other electronic platforms, communications between Defendants, pricing information regarding Crop Inputs, productions to Canadian regulators, and depositions of the same corporate executives.[8] Centralizing the Related Actions will eliminate the need for multiple duplicative requests, motions, depositions, and hearings in separate proceedings. *See, e.g.*, *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.,* 396 F. Supp. 3d 1374, 1375 (J.P.M.L. 2019) ("Centralization will eliminate duplicative discovery").

Indeed, having recognized that judicial and party resources would be needlessly wasted if multiple judges were forced to resolve these issues in separate pretrial proceedings, Movants proactively sought to consolidate the Southern District of Illinois cases. *Piper*, ECF 44  (granting

---

[8] These are merely a few of the significantly overlapping issues Movants have identified at this early stage of the litigation. There are likely to be many more as discovery proceeds.

leave to file consolidated complaint on or before February 16, 2021 as part of "effort to streamline the proceedings and maximize judicial resources"). The amount of waste would only be compounded if three different districts were required to assess the same set of facts and occurrences; such duplication would also bring with it a substantial likelihood of inconsistent rulings. *See In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig Gold*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("centralization will eliminate duplicative discovery . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.").

The risk posed by inconsistent rulings here weighs strongly in favor of centralization because the Related Actions are also class action cases subject to the class action prerequisites of Fed. R. Civ. P. 23. This Panel has "consistently held that the existence of and the need to eliminate [the possibility of inconsistent class certification rulings] presents a highly persuasive reason favoring transfer under Section 1407." *See In re Roadway Express, Inc. Emp't Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974);  *Hard Disk Drive*, 396 F. Supp. 3d at 1375 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification"); *In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359 (J.P.M.L. 2008) (transferring actions, citing the need to prevent inconsistent rulings, especially on class certification)*; In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (consolidation of cases filed nationwide would prevent inconsistent pretrial rulings).

Transfer and consolidation or coordination is necessary to avoid these inefficiencies and inconsistencies, and to promote the just and efficient prosecution of the Related Actions.

**C. Transfer and Consolidation or Coordination Will Serve the Convenience of the Parties and Witnesses.**

The Panel has found that transfer and consolidation or coordination will serve the convenience of parties and witnesses when it will "eliminate duplicative discovery . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *See Gold*, 38 F. Supp. 3d at 1395. The Related Actions involve common factual allegations and nearly identical legal theories (*see* p. 6, *supra*). As set forth above, requiring judges in separate districts to resolve substantially identical issues will almost certainly result in duplicative discovery and inconsistent pretrial rulings. *See* p. 7-8, *supra*. Transfer and consolidation or coordination will permit the transferee court to formulate a single pretrial program that minimizes the inconvenience and expense for all parties and witnesses. Consolidation in the Southern District of Illinois is particularly convenient for the reasons set forth in Section II, *infra*.

Accordingly, transfer for pretrial purposes is warranted to promote the interest of judicial economy and efficiency and the convenience of the parties and witnesses.

## II. THE RELATED ACTIONS SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF ILLINOIS

After consolidating or coordinating the Related Actions, this Panel should transfer them to the Southern District of Illinois, which is the location of the first-filed and majority of cases, the district with the strongest connection to the allegations in the litigation, and the district with the most advanced proceedings. The Southern District of Illinois can best manage the cases efficiently and transfer to that district would best advance the convenience of the parties and witnesses. Each of these issues are addressed in turn.

**A.  The First-Filed and Majority of Cases Are Pending in the Southern District of Illinois.**

As noted above, seven out of the 13 Related Actions are currently pending in the

Southern District of Illinois, including *Piper*, the first-filed action. This weighs strongly in favor

of transfer to that district. *See, e.g.*, *In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d

1351, 1353 (J.P.M.L. 2004) (holding transferee district "is where the first-filed and largest

number of actions are pending"); *In re iPhone/iPad Application Consumer Privacy Litig.*, MDL.

No. 2250, 2011 U.S. Dist. LEXIS 95969, at *3 (J.P.M.L. Aug. 25, 2011) (transferring all actions

to first-filed jurisdiction); *In re Prograf Antitrust Litig.,* MDL No. 2242, 2011 U.S. Dist. LEXIS

59448, at *2-3 (J.P.M.L. Jun. 3, 2011) (same); *In re Air Crash Near Athens, Greece on Aug. 14,*

*2005*, 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2006) (transferring actions to the Northern District

of Illinois where the majority of related actions had been filed).

**B.  The Most Advanced Cases Are Pending in the Southern District of Illinois.**

The Panel also considers where the most advanced cases are pending in selecting a

transferee forum. *See, e.g.*, *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F.

Supp. 2d 1364, 1367 (J.P.M.L. 2013); *In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354

(J.P.M.L. 2004). *Piper* was assigned to the Honorable Nancy J. Rosenstengel on January 28,

2021. *See Piper*, ECF No. 34. Since then, the parties entered into (and the Court ordered) a

stipulation setting a schedule for the filing of a consolidated amended complaint in the Southern

District of Illinois and Defendants' time to respond. *Id.*, ECF Nos. 42, 44. Plaintiffs in five of the

six actions pending in that district joined in filing a Consolidated Complaint on February 16,

2021 in connection with the Chief Judge Rosenstengel's order (*see* Consol. *Piper* Compl.), and

simultaneously filed a motion to consolidate the actions pending in that District and to appoint

interim class counsel pursuant to Fed. R. Civ. P 23(g). *See Piper*, ECF No. 53.

By contrast, none of the cases pending in either Minnesota or Kansas have advanced past the filing of initial complaints and the assignment of judges. Because proceedings in the Southern District of Illinois are significantly more advanced than those in Minnesota or Kansas, transfer to that district is appropriate.

### C.  There Is a Strong Nexus Between the Southern District of Illinois and the Related Actions.

A proposed transferee district is appropriate where there is a "nexus" between the allegations in a case and the proposed forum. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005). A "nexus" may exist where "significant events occurred and where relevant documents and witnesses . . . likely will be found." *In re Royal Alliance Associates, Inc., Sec. Litig.*, 856 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012)*; see also In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (transferring cases to the district where, *inter alia*, "several events giving rise to the litigation likely occurred").

Here, significant events occurred in Illinois. "Authorized retailer" contracts that Defendants used to keep Crop Input pricing confidential were likely executed in Illinois or by companies headquartered in Illinois, such as Univar Solutions (*See, e.g.,* Consol. *Piper* Compl. ¶ 32; *Budde* Compl. ¶ 20; *Handwerk* Compl. ¶ 32). Additionally, pricing disparity and obscurity are essential to Defendants' scheme because they make it impossible for farmers to discern what they are paying for Crop Inputs. A 2019 report demonstrates that Illinois was particularly affected by pricing disparities, reflecting a 141% difference in Illinois between the lowest and

highest reported price per gallon for Bayer AG's popular herbicide Roundup PowerMAX®, as compared to 66% in Minnesota and 37% in Kansas.[9]



It is exactly this price disparity and opacity that enabled Defendants to charge artificially high prices to unwitting farmers, which gives the Southern District of Illinois a strong connection to the claims at issue.

Moreover, relevant documents and witnesses are likely to be found in or near the Southern District of Illinois, as Wholesale Defendant Univar and Retailer Defendant Growmark—core members of the alleged conspiracy—are headquartered in Illinois. *See Royal Alliance*, 856 F. Supp. 2d at 1340 (transferring to district where "significant events occurred and where relevant documents and witnesses" were found); *see also In re Aluminum Warehousing*

---

[9] *Jones*, ECF No. 1 at ¶ 13, *citing* Brian Paff, "How Much Are Farmers In Your State Paying For Ag Chemicals?" Emergence by FBN (Feb. 14, 2020), available at https://emergence.fbn.com/inputs/in-state-price-variation-ag-chemicals.

*Antitrust Litig.*, 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) (transferring to the Southern District of New York because two defendants were headquartered there and "[n]umerous decisions regarding alleged anticompetitive conduct . . . likely were made in [that] district.").

### D. The Southern District of Illinois Has the Judicial Resources and Expertise to Efficiently Manage the Related Actions.

Dockets reflect that the Southern District of Illinois' capacity for overseeing this complex litigation exceeds that of other competing districts. There are currently no MDL proceedings pending in the Southern District of Illinois, as compared to six MDL proceedings in the District of Minnesota, and three proceedings in the District of Kansas. That is in part because the Southern District of Illinois has successfully resolved two MDL proceedings encompassing thousands of individual cases. *See In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prod. Liab. Litig.*, MDL 2100 (S.D. Ill.) (over 11,000 cases); *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, MDL 2385 (S.D. Ill.) (over 2,500 cases). These results are consistent with the Southern District of Illinois's case management statistics, which are superior to the competing districts. For example, as of September 30, 2020, the median time from filing to disposition for civil cases in the Southern District of Illinois was 13.3 months, as compared to 14.1 months in the District of Minnesota. The percentage of civil cases over three years old is 11.7% in the Southern District of Illinois, as compared to 18.5% in the District of Minnesota.[10] Those figures are particularly significant in a complex proceeding involving over a dozen defendants and thousands of class members.

---

[10] *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (September 30, 2020) (available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/09/30-1).

Moreover, the cases in the Southern District of Illinois are nearly all pending before Chief Judge Rosenstengel,[11] whose recent experience is particularly relevant to the issues to arise in this proceeding. Chief Judge Nancy J. Rosenstengel just finished presiding over *First Impressions*, No. 3:13-cv-00454, an antitrust class action raising novel and complex issues that the parties settled near the eve of trial for $200 million. *Id.*, Final Approval of Settlement Agreement and Judgment (Apr. 27, 2020), ECF No. 541. Her Honor is well-versed in handling complex antitrust litigation alleging a vertical price-fixing conspiracy involving a manufacturer and its distributors, like here. *See Marion HealthCare, LLC v. Becton Dickinson & Company*, No. 3:18-cv-01059 (S.D. Ill.); *Butler v. Jimmy John's Franchise, LLC*, No. 3:18-cv-00133 (S.D. Ill.) (plaintiff employees allege anticompetitive "no-poach" agreement between the franchisor and franchisees of nationwide fast food chain). Additionally, centralization before Chief Judge Rosenstengel would allow the Panel to assign this litigation to an experienced judge who has not yet had the opportunity to preside over an MDL. *See In re TransUnion Rental Screening Sols., Inc., Fair Credit Reporting Act Litig.*, 437 F. Supp. 3d 1377, 1378 (J.P.M.L. 2020) (transferring to Northern District of Georgia because it allowed the Panel to "assign th[e] litigation to an able jurist who ha[d] not yet had the opportunity to preside over an MDL.").

### E.  The Southern District of Illinois Is the Most Convenient Forum.

Chief Judge Rosenstengel's courtroom is located in East St. Louis, Illinois, less than 20 miles from St. Louis Lambert International Airport. Its central location makes the Southern District of Illinois the most convenient location for this proceeding, as the Defendants are generally located closer to St. Louis than either Minneapolis or Kansas City. Bayer CropScience is headquartered in St. Louis and Research Triangle Park, North Carolina; Corteva and Syngenta

---

[11] *See*, note 3, *supra*.

are both headquartered in Wilmington, Delaware; and BASF is headquartered in Florham Park, New Jersey. During much of the relevant period, Monsanto was a major seed developer, and headquartered in Creve Coeur, Missouri, just outside St. Louis. After Bayer's 2018 acquisition of Monsanto, it continues to maintain facilities in Creve Coeur where thousands are employed. Among the Retailer Defendants, Growmark is headquartered in Bloomington, Illinois; and Tenkoz is headquartered in North Metro Atlanta, Georgia.

Plaintiffs on the whole are likewise situated closer to the Southern District of Illinois than the other districts in which Related Actions are pending. Barbara Piper, the first-filed plaintiff resides in the Southern District of Illinois. Plaintiff Duncan likewise resides in Illinois. Plaintiff Jones Planting Co. is in Mississippi. Plaintiff Swanson resides in New York. And Plaintiff Canjar resides in Pennsylvania. Conversely, only one plaintiff resides in Minnesota, and only one plaintiff resides in Kansas. And, most significantly, Plaintiffs have made their preferences clear by filing more cases in the Southern District of Illinois than in any other district. The Southern District of Illinois stands out with respect to the convenience of the parties and witnesses.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Panel transfer the Related Actions to and consolidate or coordinate the Related Actions in the Southern District of Illinois.

DATED: February 23, 2021

*/s/ Vincent Briganti*
Vincent Briganti (admitted pro hac vice)
Christian Levis (admitted pro hac vice)
Roland R. St. Louis, III (admitted pro hac vice)
Noelle Feigenbaum (pro hac vice pending)
**LOWEY DANNENBERG, P.C.**
44 South Broadway
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
rstlouis@lowey.com
nfeigenbaum@lowey.com

Stephen M. Tillery (Ill. Bar No. 2834995)
Jamie Boyer (Ill. Bar No. 6281611)
Carol O'Keefe (Ill. Bar No. 6335218)
Robert L. King (Ill. Bar No. 6209033)
**KOREIN TILLERY LLC**
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
stillery@koreintillery.com
jboyer@koreintillery.com
cokeefe@koreintillery.com
rking@koreintillery.com

George A. Zelcs (Ill. Bar No. 31223738)
John Libra (Ill. Bar No. 6286721)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Jonathon Byrer (Ill. Bar No. 6292491)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
gzelcs@koreintillery.com
jlibra@koreintillery.com
rewing@koreintillery.com
jbyrer@koreintillery.com
rcortazar@koreintillery.com

Linda P. Nussbaum (admitted pro hac vice)
Bart D. Cohen (pro hac vice forthcoming)
Christopher B. Sanchez (Ill. Bar No. 6272989)
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Telephone: (917) 438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
csanchez@nussbaumpc.com

W. Joseph Bruckner (admitted pro hac vice)
Robert K. Shelquist (admitted pro hac vice)
Brian D. Clark (admitted pro hac vice)
Rebecca A. Peterson (admitted pro hac vice)
Stephanie A. Chen (admitted pro hac vice)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
wjbruckner@locklaw.com
rkshelquist@locklaw.com
bdclark@locklaw.com
rapeterson@locklaw.com
sachen@locklaw.com

J. Barton Goplerud (pro hac vice forthcoming)
Brandon M. Bohlman (pro hac vice forthcoming)
**SCHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
goplerud@sagwlaw.com
bohlman@sagwlaw.com

Robert A. Clifford (Ill. Bar No. 046184)
Shannon M. McNulty (Ill. Bar No. 6281984)
**CLIFFORD LAW OFFICES, P.C.**
120 North LaSalle, #3100
Chicago, IL 60602
Telephone: (312) 899-9090
rac@cliffordlaw.com
smm@cliffordlaw.com

Arthur N. Bailey
Marco Cercone
**RUPP BAASE PFALZGRAF CUNNINGHAM
LLC**
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Telephone: (716) 854-3400
bailey@ruppbaase.com
cercone@ruppbaase.com

Charles F. Barrett
**NEAL & HARWELL, PLC**
1201 Demonbreun Street
Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
cbarrett@nealharwell.com

Gregory S. Asciolla (pro hac vice forthcoming)
Karin E. Garvey (pro hac vice forthcoming)
Jonathan S. Crevier (pro hac vice forthcoming)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
gasciolla@labaton.com
kgarvey@labaton.com
jcrevier@labaton.com

Jonathan P. Barrett (pro hac vice forthcoming)
**BARRETT LAW, PLLC**
121 Colony Crossing, Suite D
Madison, MS 39110
Telephone: 601-790-1505
jpb@barrettlawms.com

Marc Edelson
**EDELSON LECHTZIN LLP**
3 Terry Drive
Suite 205
Newtown, PA 18940
Tel: 215-867-2399
Medelson@edelson-law.com

Joseph E. Mariotti, Esquire
**CAPUTO & MARIOTTI, P.C.**
730 Main Street
Moosic, PA, 18507
Tel: (570) 342-9999
Fax: (570) 457-1533
jmariotti@caputomarrioti.com

*Counsel for Movants and the Proposed Classes*