**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CROP INPUTS ANTITRUST LITIGATION** | **MDL No. 2993** |

**REPLY IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28
U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS**

## INTRODUCTION

Plaintiffs Barbara Piper, as Executrix of the Estate of Michael Piper, Charles Lex, John Swanson, Jones Planting Co. III, and Jason Canjar's (collectively "Plaintiffs") Motion should be granted because the Southern District of Illinois is the best forum for the requested MDL.[1] The Parties agree the Related Actions[2] should be consolidated, and under all of the relevant factors, the Southern District of Illinois emerges as the strongest choice. The first action, *Piper v. Bayer CropScience, LP*, No. 3:21-cv-00021-NJR (S.D. Ill.) ("*Piper*"), was filed there after a months-long investigation that included research into relevant markets and consultation with industry insiders and experts. Subsequent complaints copied *Piper* nearly verbatim. Beyond its first-filed status, the Southern District possesses a strong nexus to the Related Actions through the presence of Plaintiffs, Defendants, and evidence. It is also geographically central and easily accessible to Parties spread across the country. And, perhaps most importantly, the Southern District has the capacity and Chief Judge Nancy Rosenstengel has the antitrust experience to preside over this MDL.

---

[1] Plaintiffs' Motion is also supported by Plaintiff Darren Duncan and Plaintiff Vienna Eqho Farms, both of whom have actions pending in the Southern District of Illinois. (MDL No. 2993, Dkt. 72 & 75).

[2] "Related Actions" include all of the lawsuits listed on Exhibit 1 of Defendants' Response. (MDL No. 2993, Dkt. 74-1).

Responding Plaintiffs[3] argue the District of Minnesota possesses a more meaningful nexus to the Related Actions because three of 15 Defendants are headquartered there. But this factor is hardly significant when 12 Defendants are incorporated or headquartered elsewhere, including Illinois. Moreover, while Responding Plaintiffs make much of statistics, they fail to acknowledge the Southern District of Illinois was operating at 50% capacity for over a year, with two new district judges just appointed in September 2020. Even understaffed, the Southern District of Illinois disposed of cases within a few months of the District of Minnesota and has fewer cases over three years old, at 11.7% and 18.5%, respectively. The District of Minnesota and Judge Michael Davis are also already handling multiple MDLs, whereas the Southern District of Illinois and Chief Judge Rosenstengel currently have none. The Southern District of Illinois, therefore, enjoys a greater capacity to preside over these lawsuits.

The Panel should also reject Defendants'[4] suggestion that the Eastern District of Missouri is a superior choice. Defendants assert the Related Actions triggered a forum-selection clause contained in a Technology Stewardship Agreement ("TSA"), and that this clause requires lawsuits against the Bayer Defendants be transferred to the Eastern District of Missouri. Accordingly, the Bayer Defendants have filed or intend to file 28 U.S.C. §1404 motions to transfer the Related Actions. So, the argument goes, since the Related Actions should have been filed in the Eastern District Missouri, and the Bayer Defendants' motions will surely succeed, the Panel should simply

---

[3] "Responding Plaintiffs" are Plaintiffs Randi Handwerk, Dan Flaten, Ryan Bros., Inc., Michael J. Ryan, Leon Pfaff, B. Carlson, Eagle Lake Farms Partnership, Brad DeKrey, Tyler Schultz, Hapka Farms, Inc., Amy Hapka, Beeman Berry Farm LLC and Tom Burke. (MDL No. 2993, Dkt. 67 at p. 1).

[4] "Defendants" are Bayer CropScience LP, Bayer CropScience, Inc., Corteva, Inc., Cargill Inc., BASF Corporation, Syngenta Corporation, Winfield Solutions, LLC; Univar Solutions, Inc., Federated Co-Operatives Ltd.; CHS, Inc., Nutrien Ag Solutions, Inc., GROWMARK, Inc., GROWMARK FS, LLC, Simplot AB Retail Sub, Inc., Tenkoz, Inc. and Pioneer Hi-Bred International, Inc. (MDL No. 2993, Dkt. at 74, n.1).

transfer the Actions to that District in their entirety. But the forum-selection clause does not apply to Plaintiffs' claims, which do not challenge any TSA provisions, do not require any interpretation of the TSA, and do not involve any Parties' performance under the TSA. Nor do considerations of private or public interests, convenience or efficiency favor imposing a forum-selection clause on Parties who are strangers to the TSA. Simply put, the TSA is irrelevant to Plaintiffs' claims. Transferring a nationwide antitrust class action on such grounds would let the tail wag the dog.

Perhaps recognizing the TSA's forum-selection clause has nothing whatsoever to do with Plaintiffs' claims, Defendants also argue the Eastern District of Missouri enjoys an independent connection to the Related Actions. But there is not a single Action pending in that District. Further, the Eastern District of Missouri and Southern District of Illinois courthouses are a mere 3 miles apart, so arguments about convenience and accessibility are equally applicable to both. As such, the District with several pending actions—and where the first complaint was filed and the first-filed Plaintiff resides—should be favored. That a few Defendants have facilities in Missouri is meaningless absent evidence they contain relevant witnesses or documents, which Defendants do not actually assert. Further, the presence of any such witnesses or documents in the Eastern District of Missouri surely is not dispositive in a case such as this, which alleges a nationwide price-fixing scheme implemented with the aim of injuring farmers in Illinois and across the country. Taken as a whole, Defendants' arguments for selecting the Eastern District of Missouri are unconvincing.

For the reasons stated in this Reply,[5] Plaintiffs' Motion (MDL No. 2993, Dkt. 1), Interested Party Vienna Eqho Farms' Response, (*Id.* at Dkt. 72), and Interested Party Darren Duncan's

---

[5] This Reply is submitted pursuant to J.P.M.L. R. 6.1(d) which permits a consolidated reply of up to 20 pages when multiple response briefs are filed.

Response, (*Id.* at Dkt. 75), the Panel should consolidate the Related Actions and transfer them to the Southern District of Illinois.

## ARGUMENT

## I.     ALL PARTIES AGREE THAT CONSOLIDATION IS APPROPRIATE.

Under 28 U.S.C. §1407, consolidation is appropriate when "civil actions involving one or more common questions of fact are pending in different districts [and] transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a) (2021). Plaintiffs' opening Motion laid out why these conditions are met by the Related Actions, (MDL No. 2993, Dkt. 1 at 5-9), and this sentiment was echoed by every responding Party. (*See* MDL No. 2993, Dkt. 67 at 4-7; Dkt. 70 at 1; Dkt. 72 at 1-3; Dkt. 74 at 7-8; Dkt. 75 at 1; Dkt. 79 at 1). For the reasons stated in these briefs, consolidation and coordination of the Related Actions is appropriate under 28 U.S.C. §1407.

## II.    THE SOUTHERN DISTRICT OF ILLINOIS IS BETTER SUITED TO PRESIDE OVER A CROP INPUT MDL THAN THE DISTRICT OF MINNESOTA.

### A.     The First Crop Input Antitrust Case Was Filed in the Southern District of Illinois and Subsequent Complaints Merely Copied It.

When presented with competing MDL options, the Panel frequently considers the location of the first-filed action as a significant factor bearing on transfer, along with location, accessibility and capacity. *See, e.g., In re: Genentech Herceptin Mktg. & Sales Practices Litig.*, 178 F.Supp.3d 1374, 1376 (J.P.M.L. 2016) (selecting district with first-filed action because it was the most procedurally advanced and centrally located); *In re: Groupon, Inc., Mktg. & Sales Practice Litig.*, 787 F.Supp.2d 1362, 1364 (J.P.M.L. 2011) (selecting district of first-filed action which was "relatively underutilized transferee district…located in an accessible metropolitan area"); *In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F.Supp.2d 1369, 1371-1372

(J.P.M.L. 2010) (selecting district of first-filed action which was "centrally located for the parties and the likely discovery in nationwide litigation [with] docket conditions more favorable" than other contenders).

The first Related Action, *Piper*, was filed in the Southern District of Illinois on January 8, 2021. (*Piper*, Dkt. 1). That complaint reflected months of investigative work, including consultations with industry insiders and experts, obtaining and reviewing Canadian investigation documents, discussions with affected market participants at multiple levels of the distribution chain, and a thorough analysis by counsel with decades of class action antitrust experience as to the most appropriate venue. The product of that work, *Piper*, provided a comprehensive description of the crop input market, Defendants' conduct, and the antitrust injury suffered by a nationwide class of farmers. (*Id.*)

The Related Actions filed after *Piper* simply followed suit—literally. The vast majority of the factual allegations and legal claims asserted in those complaints were mirror images of *Piper*. The RICO Plaintiffs[6] attempt to distinguish themselves by alleging that additional research resulted in a claim under the Racketeer Influenced and Corrupted Organization Act, 18 U.S.C. §1962, but even a cursory examination of the purported differences reveals their cases merely built upon *Piper*'s foundation. (MDL No. 2993, Dkt. 70 at p. 2-4). For instance, the RICO Plaintiffs claim there are no "[a]llegations about [the] chilling effect of Defendants' behavior on potential online suppliers," (*Id.* at 3), but the Consolidated Complaint contains that very information, (*Piper*, Dkt. 58 at ¶57-79). Similarly, the RICO Plaintiffs contend the Consolidated Complaint did not include "entire, publicly available anti-competitive communications between Defendants," (MDL

---

[6] "The RICO Plaintiffs" are Plaintiffs Melinda Budde, B&H Farming, Tyche Ag, LLC, Ceres Ag, LLC and Cedar Draw, LLC. (MDL No. 2993, Dkt. 70 at 1).

No. 2993, Dkt. 70 at 3), but the Complaint references multiple examples of such communications, (*Piper*, Dkt. 58 at ¶66, 68 & 75). Ultimately, the RICO Plaintiffs' argument merely reinforces how thoroughly *Piper* laid out the key facts.

The Illinois-based Related Actions have also advanced farther than those in other jurisdictions. Plaintiffs filed a Consolidated Complaint, sought consolidation of all crop input cases pending in the Southern District, fully briefed competing motions for interim class leadership, and responded to the Bayer Defendants' §1404 motion to transfer. (*Piper*, Dkt. 58, 53, 67, 81 & 96; *see also Vienna Eqho Farms v. Bayer CropScience, LP.*, No. 3:21-CV-00204-NJR, Dkt. 24-1 & 55 (competing interim leadership motion and opposition)). Currently, seven Related Actions are pending in the Southern District of Illinois, and none of the Actions pending in other Districts are more procedurally advanced.

Plaintiffs' initiative in investigating and initiating the first Related Action in the Southern District of Illinois—which opened the floodgates for all of the lawsuits that followed—and the subsequent work put in by Plaintiffs and Chief Judge Rosenstengel to advance those cases, should receive significant consideration by the Panel.

### B. The Southern District of Illinois is Connected to the Related Actions, Centrally Located and Easily Accessible to All Parties.

As described in Plaintiffs' opening Motion, the Southern District of Illinois has a strong nexus to the Related Actions. (MDL No. 2993, Dkt. 1 at 11-13). Two Plaintiffs (Barbara Piper and Darren Duncan) reside in Illinois, two Defendants (Univar Solutions, Inc. and Growmark, Inc.) are headquartered in the state, and Bayer CropScience LP's headquarters are a mere 16 miles away from the Southern District of Illinois courthouse. Additionally, 7 of the 19 crop input actions are pending in that District where, as noted above, the first action was filed. Thus, the Southern District of Illinois possesses a meaningful connection to the Related Actions.

No other District enjoys a more substantial nexus to the Related Actions. Plaintiffs are located in Illinois, New York, Iowa, South Dakota, North Dakota, Mississippi, Pennsylvania, Kansas, Wisconsin, Minnesota, Arkansas, Wyoming, and Idaho. (MDL No. 2993, Dkt. 74 at p. 3-4), and Defendants are incorporated and/or headquartered in Illinois, Missouri, New York, North Carolina, Delaware, Iowa, New Jersey, Minnesota, Colorado, Georgia, and Mississippi, (*Piper*, Dkt. 58 at ¶22-39). In such situations, the Panel frequently selects a transferee district that is centrally located and easily accessible for all parties. *See, e.g., In re: Samsung Top-Load Washing Mach. Mktg., Sales Practice & Prods. Liability Litig.*, 278 F.Supp.3d 1376, 1378 (J.P.M.L. 2017) (selecting district that was "centrally located relative to the geographically dispersed domestic defendants"); *In re: Stand N'Seal Prods. Liability Litig.*, 469 F.Supp.2d 1351, 1352 (J.P.M.L. 2007) (selecting district because it was "an easily accessible location [and] two of the five corporate defendants" were located there); *In re: Circular Thermostat Antitrust Litig.*, 370 F.Supp.2d 1355, 1357 (J.P.M.L. 2005) (selected district because it was "an accessible, metropolitan location" for geographically diverse parties).

Here, the Southern District of Illinois is a centrally located choice that, given its proximity to St. Louis, Missouri, is easily accessible to all Parties. The Panel has acknowledged as much when assigning other MDLs to that District. *See, e.g., In re: Pradaxa Prods. Liability Litig.*, 883 F.Supp.2d 1355, 1356 (J.P.M.L. 2012) (selecting Southern District of Illinois where "[t]hirteen of forty related actions…are pending in the district [and its] geographically central location and accessibility also commend it for this nationwide products liability litigation"); *In re: Yasmin & Yaz Mktg., Sales Practices & Prods. Liability Litig.*, 655 F.Supp.2d 1343, 1344 (J.P.M.L. 2009) ("This district also provides a geographically central forum for this nationwide litigation in which actions are pending in various districts across the country."); *In re: Gen'l Motors Corp. DRX-Cool*

*Prods. Liability Litig.*, 293 F.Supp.2d 1381, 1382 (J.P.M.L. 2003) ("This district is centrally located in relation to the parties, anticipated documents and witnesses . . . Also, three of the eight presently pending actions are already there.") The same conclusion is justified here.

The Responding Plaintiffs argue the District of Minnesota has a superior nexus to the Related Actions because three Defendants are headquartered there and the "Panel has often looked to the location of a defendant's headquarters to determine the proper transferee forum." (MDL No. 2993, Dkt. 67 at 7-8). That may be true when there is a single defendant, but not when defendants are found nationwide. The cases cited by the Responding Plaintiffs prove this point, because they concern MDLs where a lone defendant was involved. *See, e.g., In re: Medtronic, Inc., Sprint Fidelis Leads Prods. Liability Litig.*, 536 F.Supp.2d 1375, 1376 (J.P.M.L. 2008) (all cases concerning Sprint Fidelis leads manufactured by Medtronic); *In re: St. Jude Med., Inc. Silzone Heart Valves Prods. Liability Litig.*, 2001 WL 36292052, at *1 (J.P.M.L. April 18, 2001) ("[a]ll actions are brought as class actions against the same, sole defendant…."); *In re: Delphi Corp. Securities Derivative & "ERISA" Litig.*, 403 F.Supp.2d 1358, 1359 (J.P.M.L. 2005) (actions deal exclusively with Delphi and its officers and directors).

As noted above, the Related Actions involve Defendants incorporated and/or headquartered in 11 states—a far cry from the situations presented in Responding Plaintiffs' cases. This is not a scenario in which all of the defense evidence is located in a single district. To the contrary, documents and witnesses for 12 of the 15 Defendants will be found elsewhere, including in Illinois. With regard to the Canadian Competition Bureau's investigation, Minnesota's proximity to Canada is irrelevant. As first-filed Plaintiff Piper demonstrated with her pre-filing due diligence, materials related to that investigation may be requested via written inquiries to the proper authorities. Should meetings or depositions occur, they are far more likely to take place in

Canada than the transferee district. The same is true of requests to and depositions of third parties. Given these realities, the Panel should not transfer the Related Actions to the District of Minnesota based on convenience to no more than a handful of Parties.

### C. The Southern District of Illinois Has the Capacity and Chief Judge Rosenstengel Has the Experience to Preside Over the MDL.

The Southern District of Illinois and Chief Judge Rosenstengel have the experience, skills and resources required to effectively and efficiently preside over this MDL. The Southern District of Illinois has successfully resolved multi-district litigation proceedings encompassing thousands of individual cases. *See In re Yasmin*, MDL 2100 (S.D. Ill.) (over 11,000 cases); *In re Pradaxa Prod. Liab. Litig.*, MDL 2385 (S.D. Ill.) (over 2,500 cases). Additionally, all of the crop input cases filed in the Southern District of Illinois are already pending before Chief Judge Rosenstengel, whose recent experience is particularly relevant to the issues in this proceeding. *See First Impressions Salon, Inc. v. Nat'l Milk Producers Federation*, No. 3:13-cv-00454 (S.D. Ill.) (antitrust class action settling for $200 million on the eve of trial). Chief Judge Rosenstengel is also well-versed in handling complex antitrust litigation. *See, e.g.*, *Marion HealthCare, LLC v. Becton Dickinson & Co.*, No. 3:18-cv-01059 (S.D. Ill.); *Butler v. Jimmy John's Franchise, LLC*, No. 3:18-cv-00133 (S.D. Ill.). Given this experience, there is no dispute that Chief Judge Rosenstengel is a seasoned and excellent choice to preside over an MDL.

The Southern District of Illinois also has docket conditions favorable to handling an MDL. The Panel frequently favors courts and/or judges with few or no pending MDLs. *See, e.g., In re: Regions Bank ATM Fee Notice Litig.*, 763 F.Supp.2d 1372, 1373 (J.P.M.L. 2011) (selecting district where judge is not currently presiding over an MDL and has a favorable caseload); *In re: Yasmin*, 655 F.Supp.2d at 1344 (selecting Southern District of Illinois and an "experienced transferee judge who is not currently presiding over another multidistrict litigation docket and who has a caseload

favorable to accepting this assignment."); *In re: Corn Derivatives Antitrust Litig.*, 486 F.Supp. 929, 932 (J.P.M.L. 1980) (selecting district that had fewer MDLs than other proposed districts).

Neither the Southern District of Illinois nor Chief Judge Rosenstengel currently have pending MDLs.[7] In contrast, the District of Minnesota has six, two of which are being presided over by Judge Michael Davis, the judge presently handling the Related Actions, who has also assumed senior status.[8] These factors also favor selecting the Southern District of Illinois as the transferee forum. *See, In re: Regions Bank ATM Fee Notice Litig.*, 763 F.Supp.2d at 1373; *In re: Yasmin*, 655 F.Supp.2d at 1344.

The Responding Plaintiffs make much of statistical comparisons between the District of Minnesota and the Southern District of Illinois. (MDL. No. 2993, Dkt. 67 at 9-10). But those Plaintiffs fail to mention that the Southern District of Illinois was operating at 50% capacity for well over a year, with two of its four district judgeships unfilled.[9] Placed in proper context, the difference in cases per judge between the District of Minnesota and the Southern District of Illinois makes sense and is likely to drop now that the Southern District of Illinois is fully staffed. Moreover, the unfilled appointments make it all the more impressive that judges in the Southern District of Illinois only needed, on average, 3 more months to dispose of civil matters than judges in the District of Minnesota in 2020. And the overall efficiency of the Southern District of Illinois

---

[7] *See https://www.jpml.uscourts.gov/pending-mdls-O.*

[8] *See https://www.mnd.uscourts.gov/mdl-cases* (showing pending MDLs)*; https://www.mnd.uscourts.gov/content/baycol-product-liability-litigation* (Judge Davis presiding)*;https://www.mnd.uscourts.gov/content/centurylink* (Judge Davis presiding)*.

[9]   *See https://www.ilsd.uscourts.gov/TheCourts.aspx.* Judge David R. Herndon retired on December 31, 2018, and Judge Michael J. Reagan retired on March 31, 2019. Those positions remained unfilled until Judge Stephen P. McGlynn and Judge David W. Dugan were appointed on September 22, 2020 and September 25, 2020, respectively.

is evident in that 11.7% of its civil cases are over three years old versus 18.5% for the District of Minnesota.[10]

Simply put, the Southern District of Illinois generally and Chief Judge Rosenstengel particularly are ready and able to handle this MDL effectively and efficiently. With all respect for Judge Davis and the District of Minnesota, it is the Southern District of Illinois and Chief Judge Rosenstengel who are best situated to preside over the Related Actions.

## III.    THE EASTERN DISTRICT OF MISSOURI IS NOT AN APPROPRIATE TRANSFEREE FORUM.

### A.    An Inapplicable Forum Selection Clause Should Not Control Where the Related Actions Are Transferred.

"Contractual forum selection clauses do not limit the Panel's authority with respect to the selection of [a] transferee district or, by the same token, our authority to transfer tag-along actions to an existing MDL." *In re: Park West Galleries, Inc. Mktg. & Sales Practices Litig.*, 655 F.Supp.2d 1378, 1379 (J.P.M.L. 2009) (internal quotations omitted). The "pendency of Section 1404 motions, alone, is not dispositive, and we look to other circumstances to determine whether there is a reasonable prospect that the Section 1404 motions will resolve the difficulties posed by duplicative multidistrict litigation…." *In re: Natrol, Inc. Glucosamine/Chondroitin Mktg & Sales Practices Litig.*, 26 F.Supp.3d 1392, 1393 (J.P.M.L. 2014). When the timing and outcome of §1404 motions are unknown, as is the case here, that weighs in favor of proceeding with §1407 consolidation and transfer to whatever district the Panel deems appropriate. *See In re: Zetia Antitrust Litig.*, 325 F.Supp.3d 1369, 1371 (J.P.M.L.2018).

---

[10] These same considerations plague statistical comparisons between the Eastern District of Missouri and the Southern District of Illinois as well.

Acknowledging this precedent, Defendants argue that under §1407 (notwithstanding the pending §1404 motions) the Panel should transfer the Related Actions *in their entirety* to the Eastern District of Missouri. Defendants assert this transfer is proper because that "is the forum that was contractually selected by the named plaintiffs and the Bayer CropScience Defendants to litigate this dispute," and Plaintiffs did not "identify any extraordinary circumstances that would justify disregarding the parties' agreed upon forum." (MDL No. 2993, Dkt. 74 at 12). It is difficult to envision a more classic case of putting the cart before the horse. Defendants' argument *assumes* the Related Actions triggered the clause. It *assumes* Plaintiffs needed to file in the Eastern District of Missouri. It *assumes* Plaintiffs were required to identify extraordinary circumstances. And it *assumes* the Bayer Defendants' §1404 motions are likely to succeed. None of these assumptions are accurate.

The Bayer Defendants' §1404 motion relies exclusively on a forum-selection clause in a TSA drafted by Bayer that grants a limited license for farmers to use certain plant genetic material ("Seed Technology") developed by Monsanto decades ago, which conveys traits (such as drought resistance) to certain types of seeds. (MDL No. 2993, Dkt. 74-2).[11] The forum-selection clause states in relevant part:

> THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT, IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES **ARISING OUT OF OR CONNECTED IN**

---

[11] Defendants attached the Bayer Defendants' Memorandum in Support of their §1404 Motion to Transfer as Exhibit 2 to their Response. (MDL No. 2993, Dkt. 74-2). While Plaintiffs normally would not attach an entire brief as an exhibit, they are doing so here in the interests of completeness and the Panel's convenience. As such, Plaintiffs' Opposition to the Bayer Defendants' Motion to Transfer is attached as Exhibit A.

**ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES.**

(*Id.* at 39) (emphasis added). The TSA focuses on the farmer's rights and responsibilities *after* genetically modified seeds are purchased. (*Id.*) The TSA does not set seed or other crop input prices. Notably, the Seed Technology at issue in the TSA includes only a fraction of the Bayer-manufactured seeds involved in these lawsuits, and an even smaller fraction of the crop inputs at issue in the Related Actions, many of which were manufactured and distributed by entities wholly unrelated to Bayer.

The Bayer Defendants' §1404 motions are not likely to succeed because the TSA's forum-selection clause does not apply to Plaintiffs' claims. Courts interpret forum-selection clauses pursuant to general contract principles, and a clause "will govern only if it applies to the dispute at hand." *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 837 (7th Cir. 2012). Courts are careful not to apply "broadly worded" clauses literally where that interpretation would carry beyond the parties' intent. *Abbott Laboratories v. Takeda Pharm. Co.*, 476 F.3d 421, 426 (7th Cir. 2007).

By its own terms, the forum-selection clause is limited to claims that "aris[e] out of" or are "connected with" the TSA or the use of Bayer Seed Technology. The terms "arise out of" and "connected with" have settled meanings. A claim "arises out of" a contract only when it "depend[s] on the construction of" the contract or the parties' performance of the contract. *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994); *accord Cape Flattery Ltd. v. Titan Mar.*, LLC, 647 F.3d 914, 922 (9th Cir. 2011). Similarly, for a claim to be "connected" to a contract, it must possess "some direct connection" with that contract, otherwise "the term would be meaningless." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219 (11th Cir. 2011).

Given this precedent, there is no reasonable dispute that Plaintiffs' claims involving *other* crop inputs—be they Bayer-manufactured products other than those with Seed Technology or inputs manufactured and sold by completely different Defendants–fall outside the scope of the TSA's forum-selection clause. But even if Plaintiffs exclusively purchased inputs utilizing Seed Technology, that *still* would not trigger the clause because Plaintiffs' lawsuits neither arise out of, nor are connected with, the TSA in any way. Their claims do not challenge a TSA provision, their claims do not require interpretation of the TSA, and their claims do not flow from any Parties' performance of the TSA. Instead, Plaintiffs challenge Defendants' conspiracy to block electronic platforms from entering the crop input marketplace. That conspiracy existed and operated entirely outside the bounds of the TSA. Or, stated differently, Plaintiffs' claims, injuries and damages would be exactly the same whether the TSA existed or not. It simply has no bearing on these proceedings.

Nor do Plaintiffs' claims relate to "the use of" Seed Technology. In common parlance, "use" refers to "action and implementation." *Bailey v. United States,* 516 U.S. 137, 145 (1995). This interpretation is fully consistent with the TSA's focus on how products containing Seed Technology are used *after* they are purchased. Plaintiffs' claims do not arise out of any "action" or "implementation" of the Seed Technology. To the contrary, they deal exclusively with conduct occurring *before* crop inputs are purchased. Had Bayer wanted this clause to cover "purchases," "sales," or other practices, it should have included that language. *See, e.g., Li Gear, Inc. v. Kerr Mach. Co.*, 2017 WL 432931, at *1 (N.D. Ill. February 1, 2017) (example of contract expressly providing that, unlike the forum-selection clauses here, "sales" made pursuant to the contract were governed by the forum-selection clause). Having failed to do so, Bayer cannot stretch the language of the forum-selection clause beyond recognition to achieve the same result.

14

Defendants' arguments to the contrary are meritless. For example, Defendants contend Plaintiffs' claims implicate the TSA because farmers could only purchase certain inputs if they signed the Agreement. (MDL No. 2993, Dkt. 74-2 at 3). But a mere but-for relationship between a contract and a claim does not trigger a contract's forum-selection clause. *See Omron*, 28 F.3d at 602 ("But-for causation is an unsatisfactory understanding of language referring to 'disputes arising out of' an agreement."); *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1317 (11th Cir. 2013) ("the fact that a dispute could not have arisen but for an agreement does not mean that the dispute necessarily 'relates to' that agreement"). Defendants also assert that Plaintiffs' lawsuits challenge the TSA's requirement that farmers purchase Seed Technology from authorized retailers. (MDL No. 2993, Dkt. 74-2 at 11-12). But Plaintiffs are challenging Defendants' unlawful group boycott of electronic crop input platforms. The "authorized distributor" provision says nothing about how crop input prices are set, how Bayer selects third-party distributors or what limitations are put on retailers. And it is obviously silent about how other Defendants engage in such activities. Plaintiffs' claims are exactly the same whether that provision exists or not.

Even assuming, *arguendo*, Plaintiffs' claims were subject to the TSA's forum-selection clause, transfer would still be inappropriate. Neither *Atlantic Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013), nor subsequent decisions support transfer when, as here, a case involves several parties and the majority of them are not subject to the forum-selection clause.[12] Here, the

---

[12] *See Fansano v. Guoqing Li*, 482 F. Supp. 3d 158, 173-74 (S.D.N.Y. 2020) (*Atlantic Marine* "does not protect the legitimate expectations of the parties, [when] only [a few] of the Defendants can be considered bound"); *Eastcott v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. CV 16-904, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (explaining that *Atlantic Marine* "depend[s] crucially on the assumption that a valid forum selection clause will cover each individual claim") (internal quotations omitted); *In re Dozier Fin., Inc.*, 587 B.R. 637, 650 (Bankr. D.S.C. 2018) (although *Atlantic Marine* "pointed out that courts should not unnecessarily disrupt the parties' settled expectations . . . those expectations have been disrupted here by . . . the filing of this adversary proceeding involving parties not subject to and claims not covered by" a forum-selection

clause applies to only *two* of the 15 Defendants in this action, and even with respect to Bayer covers only a fraction of the manufactured crop inputs at issue. Applying that clause to Plaintiffs' claims against 13 Defendants who are strangers to the TSA would undermine the central premise of *Atlantic Marine*, *i.e.*, holding contracting parties to "*their* bargain." *Atl. Marine*, 571 U.S. at 66 (emphasis added).

Even if one (incorrectly) assumes the forum-selection clause applies, courts would still need to consider four factors when deciding whether to enforce the forum-selection clause given the presence of the non-contracting parties: (1) the forum-selection clause; (2) the private and public interests relevant to non-contracting parties; (3) threshold issues relating to severance; and (4) efficiency interests in avoiding duplicative litigation weighed against private and public interests. *Meyer v. Newmary Corp.*, 2020 WL 3256263, at *7 (N.D. Ind. June 16, 2020). All four factors weigh against transfer.

First, even assuming the clause applies, it only covers Bayer and a small subset of Bayer-manufactured products, and none of the products manufactured by the other 13 Defendants.

---

clause); *Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 964, 966 (W.D. Wis. 2017) (disregarding forum-selection clause because *Atlantic Marine* does not "mandate severance and transfer of a party bearing a forum selection clause in all multiparty cases"); *Eastcott*, No. CV 16-904, 2016 WL 3959076, at *1, 4 (denying transfer because forum-selection clause "would only govern a tiny subset of the claims in this action, which distinguishes this case from [*Atlantic Marine*]"); *Bronstein v. U.S. Customs & Border Prot.*, No. 15-CV-02399-JST, 2016 WL 861102, at *5-6 (N.D. Cal. Mar. 7, 2016) (denying transfer because "it would be unfair to bind [non-contracting parties] to the contract when they had no knowledge of the contract's terms"); *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Const.*, LLC, No. CIV.A. 15-1627, 2015 WL 5774801, at *6 (E.D. La. Sept. 30, 2015) (denying transfer because "only a portion of the plaintiff's claims are subject to a forum selection clause"); *Aquila v. Fleetwood, R.V., Inc.*, No. 12-CV-3281 LDW GRB, 2014 WL 1379648, at *4 (E.D.N.Y. Mar. 27, 2014) (refusing to dismiss under *Atlantic Marine* because of the existence of overlapping claims against multiple defendants); *see also In re Ryze Claims Sols.*, LLC, 968 F.3d 701, 712 (7th Cir. 2020) (explaining that presence of non-contracting parties in suit is extraordinary circumstances that could preclude transfer under *Atlantic Marine*).

Second, neither private nor public interests favor transfer because the Southern District of Illinois is home to the first-filed action, possesses a strong nexus with the Related Actions, is convenient, and is capable of handling the lawsuits as-filed or as an MDL. Third, no defects in jurisdiction, venue, or joinder favor transfer. And fourth, there is no dispute that the Related Actions should be litigated together in the same forum. (*See* §1, *supra*). As a result, the Bayer Defendants' transfer motion provides no compelling reason why public and private interests are better served by the Eastern District of Missouri.

In summary, there is no reason to assume, as Defendants do, that the Bayer Defendants' §1404 motion to transfer will be granted. In fact, it is highly probable their motion will be denied, which is why Defendants are trying to short circuit the §1404 process here by seeking transfer under §1407. Because Plaintiffs' claims have nothing to do with the TSA, the forum-selection clause is simply not triggered. And even if it were, the balance of factors considered when multiple parties are strangers to the clause, as is the case here, weighs against transfer. A nationwide antitrust class action should not be transferred based on such flimsy foundations.

### B.   None of the Related Actions are Pending in the Eastern District of Missouri.

Defendants also assert the Related Actions are connected to the Eastern District of Missouri regardless of the TSA forum-selection clause. But there is not a single Related Action filed there. The Panel is traditionally reluctant to select a district without a pending action as the transferee forum. *See, e.g., In re: TLI Commc'ns. LLC Patent Litig.*, 26 F.Supp.3d 1396, 1397 (J.P.M.L. 2014) (declining to transfer cases to defendants' chosen forum where no actions are pending); *In re: Helicopter Crash in Germany on Sept. 26, 1975*, 443 F.Supp. 447, 450 (J.P.M.L. 1978) (noting the "Panel's traditional reluctance to select as the transferee forum a district in which no related

action is pending"); *In re: Celotex Corp. Technifoam Prods. Liability Litig.*, 68 F.R.D. 502, 505 (J.P.M.L. 1975) (same).

The cases cited by Defendants are not on-point here. For example, in *In re: Sunstrand Data Control, Inc. Patent Litigation,* the Panel noted that "[n]one of the districts in which actions are pending offers a strong nexus to the common factual questions in this litigation, and little discovery on those issues could be expected to occur in any of them." 443 F.Supp. 1019, 1021 (J.P.M.L. 1978). Similarly, in *In re: Swine Flu Immunization Products Liability Litigation,* suits were filed against the United States for improper administration of swine flu vaccinations. 446 F.Supp. 244, 245-246 (J.P.M.L. 1978). The Department of Health, Education and Welfare, which administered the program, was located in Washington, D.C. *Id.* at 246-247. Given that all evidence relevant to defendant's actions would be found in the District of Columbia, the Panel transferred the cases there even without a pending action. *Id.* at 247.

This is not a situation where the Panel must select a district with no pending action because no viable alternative exists. Here, for reasons previously provided, the Southern District of Illinois possesses a strong nexus with this case. Nor is this a situation in which the Related Actions involve a single defendant who resides in a district without a current claim. Defendants are scattered throughout the United States, so, for the reasons stated above, the location of a single defendant is not outcome determinative. Simply put, there is no compelling reason to overlook the Eastern District of Missouri's lack of a pending action. That factor weighs against its selection as the transferee forum.

C.    **The Eastern District of Missouri is Not More Convenient than the Southern District of Illinois.**

The courthouse for the Eastern District of Missouri is 3 miles from the courthouse for the Southern District of Illinois. Basically, the two buildings sit on opposite sides of the Mississippi

River. Thus, to the extent the Eastern District of Missouri is centrally located, accessible, and convenient for Parties and witnesses, the same must be said for the Southern District of Illinois.

Defendants allege "several Defendants have significant connections to the Eastern District of Missouri," but this contention cannot withstand scrutiny. (MDL No. 2993, Dkt. 74 at 13). While Bayer CropScience LP is headquartered in that district, the other supposed defense ties are tenuous, at best. Defendants list a litany of plants, warehouses, and employees located in the Eastern District of Missouri, but neither their brief nor the declarations submitted in support actually establish a connection between those facilities and the Related Actions. More to the point, there is no proof that relevant documents or witnesses are located there. And even if they were, documents are routinely transferred electronically and witnesses are routinely deposed either remotely or at a location agreed upon by the parties and witnesses. Without that tie, the presence of buildings and people within the Eastern District of Missouri is irrelevant.

In short, the Eastern District of Missouri should not be selected as the transferee district. Defendants' argument is based on wishful thinking and speculation, when in reality not a single action is filed there. Moreover, the Eastern District of Missouri is no more conveniently located than the Southern District of Illinois. That is the District where the crop input litigation began, where the most procedurally advanced cases are, where the court has capacity to handle an MDL, and where Chief Judge Rosenstengel has the experience to preside over it with excellence. As such, the Southern District of Illinois remains the strongest choice for the crop input MDL.

## **CONCLUSION**

The Southern District of Illinois should be selected as the transferee forum for this MDL. It is the district where the crop input antitrust litigation began, it possesses meaningful ties to parties and proximity to evidence, it is centrally located and easily accessible, and Chief Judge

Rosenstengel has the skills and capacity to preside over the Related Actions. The responding briefs fail to provide a persuasive reason why the District of Minnesota or the Eastern District of Missouri is a better choice. Accordingly, the Panel should select the Southern District of Illinois for transfer and consolidation of the Related Actions, as well as any subsequently filed tag-along lawsuits.

DATED: March 25, 2021

*/s/ Randall P. Ewing, Jr.*
Stephen M. Tillery (Ill. Bar No. 2834995)
Jamie Boyer (Ill. Bar No. 6281611)
Carol O'Keefe (Ill. Bar No. 6335218)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: 314-241-4844
stillery@koreintillery.com
jboyer@koreintillery.com
cokeefe@koreintillery.com

George A. Zelcs (Ill. Bar No. 3123738)
John Libra (Ill. Bar No. 6286721)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Jonathon Byrer (Ill. Bar No. 6292491)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
jlibra@koreintillery.com
rewing@koreintillery.com
jbyrer@koreintillery.com

Vincent Briganti
Christian Levis
Roland R. St. Louis, III
**LOWEY DANNENBERG P.C.**
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
rstlouis@lowey.com

W. Joseph Bruckner (MN No. 0147758)
Robert K. Shelquist (MN No. 21310x)
Brian D. Clark (MN No. 0390069)
Rebecca A. Peterson (MN No. 0392663)
Stephanie A. Chen (MN No. 0400032)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
wjbruckner@locklaw.com
rkshelquist@locklaw.com
bdclark@locklaw.com
rapeterson@locklaw.com
sachen@locklaw.com

Linda P. Nussbaum
Bart D. Cohen
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Telephone: (917) 438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com

*Attorneys for Plaintiffs*